We proceed to the fourth case of the day, which is Oscar Guzman-Garcia v. Acting Attorney General Wilkinson, Appeal No. 20-1966, and we'll hear first from Ms. Chun. Good morning, Your Honors. May it please the Court, Lisa Chun for Petitioner Mr. Guzman. We have argued four issues in this case. The first one involves whether Mr. Guzman put forth a cognizable particular social group. The second is whether the immigration judge made a finding as to nexus. The third involves internal relocation, and the fourth is the discretionary denial of asylum. In regards to the cognizable particular social group, we've argued that the Board's precedent decisions that require social distinction in addition to particularity are an unreasonable interpretation of the statute, and the reason for that is related to the second issue, whether the immigration judge made a finding as to nexus. The parties disagree, and the Board also found that the judge did make a finding of nexus. Mr. Guzman argued that the judge did not make a finding of nexus, and I think that the confusion is because of the social visibility requirement. The social visibility requirement itself invites an adjudicator to insert a nexus analysis into that analysis, and so I think that the confusion lies there. In addition, we're not sure if the social distinction test, also known as social visibility test or particularity, we would argue that the better approach is the matter of a cost approach of immutability, and if there's any concern about floodgates, a lot of that is addressed in the nexus requirement. So as this court mentioned in CCB Holder, nexus is where the rubber meets the road, and also in Gattini, this court held that the visibility requirement makes no sense, and just to illustrate a little further about whether the immigration judge did not make a point, the 10-point citations involve Board cases where the issue was social visibility, social distinction, as well as a Second Circuit case where the issue was social visibility. In addition to the confusion that this requirement by the Board causes, the respondent cited to Lozano Zuniga v. Lynch where this court did find no nexus, and in that analysis, the court talked about generalized fear and harm and not being singled out. That sounds a lot like the Board's analysis of the social distinction, social visibility regarding particular social groups. Could you address the passage, it's at page 11 of the immigration judge's opinion, your short appendix at page 19, which doesn't use the word nexus, but certainly looks to me a lot like a finding of no nexus. The record does not support that the harm he fears is directed at him as a member of any particular social group. He testified he did not know why he and his brother were targeted initially, etc. Yes, Your Honor. So that, I believe, is talking about generalized, that there was no singling out of him, and so that's the social distinction analysis that, you know, generalized fear of gang violence is not necessarily, it doesn't put you into the social distinction requirement of a particular social group, and I would just note that the judge does say any particular social group, and so I do, I would agree that the language used by the judge is not clear, but I would argue that her pinpoint citations to case law are very clear that it was the Board arguing social distinction and visibility, and so this, herein again, lies the unworkableness of the Board's requirements, is that the nexus and the social visibility, social distinction analysis sound very similar, and it just shouldn't be that hard for noncitizens to figure out how the judge ruled because, again, if the judge did rule on nexus and it wasn't brought up on appeal, then it is exhausted, and I think the prior attorney that represented Mr. Guzman on appeal thought, also agreed that the judge didn't rule on nexus, and so the language, I do believe, is not as clear as it could be in the immigration judge's decision, but her, the judge's citations, I think, are very clear. In terms of the internal relocation, the immigration judge found that there was no attempt to locate Mr. Guzman in the years immediately following the murder of his brother, and that is also factually incorrect. There was, after his brother had been eaten and before he had passed away, Mr. Guzman remained in his house, in his brother's house in Acapulco, and stated that there were people looking for him because there was a pending problem. Then he moved to his hometown again in Iliantinko, and he stated that men had shot up the home, and he mentioned that the two men dressed very similarly to the two men that he saw beating up his brother, and then he also stated that he had heard, after he had moved away from his hometown, he stated that he heard a lot of people who knew him saying that people were looking for him in their hometown because he was a witness to his brother's murder, and then on cross-examination, he did mention that two people went around in the neighborhood asking for the Guzman family, so we don't believe there is substantial evidence to support the immigration judge's finding that nobody looked for him after the, after his brother was murdered. There wasn't any evidence that since he moved to the United States about 14 years ago that anybody had threatened his family or looked for him, was there? I believe his, he did get a call from his father in 2013 that there was some gang activity, but it wasn't, there wasn't anything directly linking that to the murder of his brother. Yes, I think that is correct, Your Honor. And I think he conceded that. Yes, he did. We're talking about the fact that there were instances where people did look for him after his brother was... Immediately after, right. But nothing in the last, certainly, 14 years since he's been here. Yes, Your Honor. Correct. And I see I'm in my rebuttal time, so I will reserve the rest. Thank you. Thank you, Ms. Chun. For the acting Attorney General, Ms. Perry. May I please the Court, Roseanne Perry on behalf of the Attorney General. Substantial evidence supports the agency's denial of Mr. Guzman-Garcia's withholding or removal application. Mr. Guzman-Garcia failed to establish that it is more likely than not that he would be persecuted upon his return to Mexico. With regard to the nexus determination, he has failed to exhaust any claim that he established nexus between any persecution and his membership in a particular social group or any other protected ground. While Petitioner argues that the IJ did not make a nexus determination, it's clear from the record that he did. The IJ specifically stated that Petitioner failed to meet the one central reason standard. The IJ also noted that while Mr. Guzman claimed that he would be targeted in the future by gangs because he witnessed the murder of his brother, the IJ pointed out that when criminals and criminal organizations direct harm against anyone and everyone perceived to have interfered with or who might present a threat to criminal enterprises, a particular individual generally does not fear persecution on account of membership in some group. Instead, the person fears general crime conditions. The IJ highlighted absence of evidence to show that Mr. Guzman-Garcia's alleged persecutors were or would be motivated to harm him based on his reported group membership. The IJ specifically stated that there was no indication that any alleged treatment would be justified. The IJ also noted that Petitioner did not make a nexus determination. The IJ also noted that Petitioner failed to meet the one central reason standard. The IJ pointed out that while Mr. Guzman-Garcia's alleged persecutors were or would be motivated to harm him based on his reported group membership, a particular individual generally does not fear persecution on account of membership in some group. Instead, the IJ highlighted absence of evidence to show that Mr. Guzman-Garcia's alleged persecutors were or would be motivated to harm him based on the fact that he was a member of a particular social group that is cognizable. He certainly raised that in this court. And are you saying it was not raised in the board? Well, he's not stated that. Maybe I've erred in saying that. His Roman numeral two is the board erred by affirming the IJ's decision that the petitioner failed to demonstrate a cognizable social group. Now, you may or may not be correct about that, but he at least has raised it. So why don't you proceed with the rest of the argument? The record does not compel the conclusion that Mr. Garcia could not reasonably relocate within Mexico. The question is whether he could safely relocate and whether it's reasonable to expect him to do so. After his brother was killed, he went home for a year, and there was a shooting. But then he relocated to Puebla, where he lived for three years, and which was 15 to 16 hours away from where he previously lived. And then he moved to Mexico City, where he lived for almost another three years. So the record does show that he's able to relocate. If there are no further questions, the government or respondent respectfully request that the court deny the petition for review. Thank you, Ms. Perry. Any rebuttal, Ms. Chun? Yes, thank you, Your Honors. In regards to the nexus and waiving it, the claim. So our argument is that the judge never made a ruling as to nexus. And so if the judge never made a ruling as to nexus under Chenery, you know, this court can't make that finding for the judge. And the board didn't make an independent finding. The board just said the judge made a finding, and we agree. And so I don't, we don't believe that the nexus argument has been waived, because our argument is that the immigration judge never made a finding. And so under Chenery, it should be remanded, the judge to decide that in the first instance. In terms of the internal relocation, the judge also did not find that he was safe in Puebla and Mexico City. The judge found that there was no attempt to locate him in the years immediately after his brother was murdered. And so this court can't substitute what it believes when the premise of the judge's finding was incorrect to begin with. And so also under Chenery, we would argue that it needs to go, be remanded to the judge so that the judge can make that finding and correct that factual error. In terms of, I think Judge Hamilton, you are correct, that Mr. Guzman did raise the Cognizable Social Group before the board, and we're just renewing those arguments before this court. Thank you, Your Honors. All right. Our thanks to both counsel. The case will be taken under advisement.